FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 AUG 17 AM 9:58

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SO. DIST. OF GA.

STATESBORO DIVISION

| | | |
|---|---|---|
| MARK L. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV604-155 |
| | ) | |
| WARDEN HUGH SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendants have filed a motion for summary judgment. Doc. 33. Plaintiff has filed a response opposing defendants' motion. Doc. 49. For the reasons that follow, defendants' motion should be GRANTED and plaintiff's complaint should be DISMISSED.

## I. Background

Plaintiff was incarcerated in the E-2 Building of the Georgia State Prison as a protective custody inmate on March 30, 2004 when another inmate, Jay Fate, attacked him on the recreation yard with a homemade weapon. Doc. 35, Ex. A, Roberts Aff. ¶ 4; Doc. 49, Ex. A, Williams Dep. at 37-39. Inmate Fate was also a protective custody inmate housed in the E-2

building of the prison. Roberts Aff. ¶ 5; Williams Dep. at 26. Inmates housed in the protective custody portion of the prison are allowed into a recreation yard adjoining the E-2 Building for exercise once a day. Roberts Aff. ¶¶ 6, 7. Defendant Officers Choice and Tompkins were assigned to monitor the protective custody inmates in the yard on March 30, 2004. Roberts Aff. ¶ 7.

While the protective custody inmates were out in the recreation yard on that date, Fate attacked plaintiff with a homemade weapon with no apparent provocation. Doc. 1; Doc. Williams Dep. at 37-39; Doc. 35, Exs. C, D. At the time of the attack, Officer Choice had stepped into a guard station at the north end of the yard to place a phone call to the captain's office while Officer Tompkins remained in the yard. Choice Aff. ¶ 5. Although Officer Choice was not on the yard, she remained within a few feet of the door to the recreation yard at all times. Id. When the attack on plaintiff began, a call for assistance was broadcast over the radio and Officer Choice immediately responded. Id. After observing the attack by Fate, Officer Choice immediately ordered Fate to stop. Choice Aff. ¶ 6. Fate then threw his weapon to the ground. Id. Prior to this incident, Officer Choice

believed that Fate and Williams were friends and was unaware of any tension between them. Choice Aff. ¶ 7.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and

by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).  A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

### III. Section 1983

Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under the color of state law. 42 U.S.C. § 1983.  In order to establish a claim under §

4

1983, plaintiff must show that defendants acted under the cloak of state authority when they participated in the conduct alleged by plaintiff and that their actions deprived plaintiff of a right or rights secured by the United States Constitution or other federal laws. Violations of state statutes or tortious conduct under state law do not constitute the type of injury for which § 1983 provides a remedy.

Section 1983 is not a source of rights, but a means of vindicating federal rights. Albright v. Oliver, 510 U.S. 266, 271 (1994). In analyzing a § 1983 claim, a court must first "identify the specific constitutional right allegedly infringed." Id.; Graham v. Connor, 490 U.S. 386, 394 (1989). Plaintiff alleges in his complaint that defendants violated his Eighth Amendment rights through deliberate indifference to a substantial risk of harm posed to plaintiff by another inmate.

## IV. Analysis[1]

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). When prison officials become aware of

---

[1]Plaintiff originally asserted claims pursuant to Georgia law but has decided to abandon those claims. Doc. 49.

a threat to an inmate's health and safety, the Eighth Amendment's proscription against cruel and unusual punishment imposes a duty upon those officials to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir.), cert. denied, 496 U.S. 928 (1990). Indeed, "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Farmer, 511 U.S. at 833 (citations omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however." Brown, 894 F.2d at 1537 (citing Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)); Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991) ("Proof of mere negligence will not give rise to a constitutional violation."). Before the tort can be raised to constitutional stature, the official's conduct must manifest "conscious or callous indifference to a prisoner's rights." Zattler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986); Gullate v. Potts, 654 F.2d 1007, 1012 (5th Cir. 1981); see Morgan v. District of Columbia, 824 F.2d 1049, 1057-58 (D.C. Cir. 1987). Prison officials are not held liable for every attack by one inmate upon another, Zattler, 802 F.2d at 400, nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th

Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d at 1537.

"An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is aware, exists and the official does not 'respond[] reasonably to the risk'. . . ." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (quoting Farmer, 511 U.S. at 834). To survive a motion for summary judgment on an Eighth Amendment claim brought pursuant to § 1983, plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). To establish deliberate indifference, plaintiff must demonstrate that the official "[knew] of and [disregarded] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 834, 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Moreover, "an official's failure to alleviate a

significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838; see also Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) (plaintiff must establish that defendant had a subjective awareness of a substantial risk of serious physical threat to plaintiff in order to state a cognizable Eighth Amendment claim).

Plaintiff has failed to offer any evidence in the instant case that defendants knowingly disregarded an excessive risk to his safety prior to the attack on the recreation yard. Prior to that attack, neither Deputy Warden Roberts nor Officer Choice had any reason to believe that plaintiff was in danger of being attacked by inmate Fate. Roberts Aff. ¶ 8; Choice Aff. ¶ 7. Plaintiff contends that defendants knew that Fate was violent, since he had been involved in three violent incidents, and that Fate had threatened to attack "an inmate" if he were not returned to high security housing. Doc. 49. Plaintiff has misrepresented a letter from Fate to reach this conclusion, however. In a letter to the classification committee, Fate describes incidents in which he was attacked by other inmates. Doc. 49, Ex. D. In the letter, Fate states that if he saw the two prisoners that attacked

him again, he would try to kill them. Id. However, plaintiff is not one of these individuals and plaintiff offers no evidence that Fate was housed with these individuals. Thus, plaintiff's assertion that Fate "threatened to assault an inmate if he was not returned to his preferred housing" mischaracterizes Fate's threat, which was retaliatory in nature (specifically directed toward his assailants) rather than a generalized threat against other inmates if he were not given alternate housing at the prison.

Plaintiff himself concedes that prior to the incident on March 30, 2004, he had only spoken with Fate "a couple of times" and had never had any problems with him.[2] Williams Dep. at 26. Fate had never threatened plaintiff and plaintiff did not suspect that Fate harbored any animus towards him. Id. Accordingly, plaintiff had never indicated to prison officials that he feared that Fate, or any other inmate, may attack him.[3] Id.

---

[2] Plaintiff was also unaware of any similar type of attacks involving protective custody inmates taking place on the recreation yard prior to the attack on him. Williams Dep. at 31.

[3] Plaintiff states in his brief that inmate Michael Brewer had informed prison counselor Ivan West that Fate had made threats of violence. Doc. 49 at 5. Brewer states in his deposition, however, that Fate had never threatened him, but that he had "heard [Fate] make comments like he didn't like it where he was at there in E-2 and he was going to do something to get moved back out of there. He wanted – he wanted to go back to K-building where the T.V.'s are at." Brewer Dep. at 32. Brewer then states that he informed West about these comments. Id. at 33. When asked if he was aware of any threats Fate made against another inmate, correctional officer, or CERT Team member, Brewer replied, "No. I can't say I do." Id. This testimony therefore does not support plaintiff's contention that West had knowledge of threats of violence made by Fate.

at 38-40. An officer must have been aware of a "particularized threat or fear felt by [p]laintiff" in order to have the subjective knowledge necessary for a finding of liability. Carter, 352 F.3d at 1350 (defendants' awareness that plaintiff's cellmate was a "problem inmate" who was prone to violence and who had stated that plaintiff would assist in the cellmate's staged hanging "one way or another," was insufficient to establish Eighth Amendment liability). Plaintiff has failed to establish that any defendant had a subjective awareness of a substantial risk of serious physical threat to him, a required element of his Eighth Amendment claim, and therefore plaintiff's claims should be DISMISSED.[4]

---

[4] Plaintiff claims that the Eleventh Circuit decision in Ekers v. Thrift, 112 Fed. Appx. 2 (Table) (11th Cir. 2004) (unpublished), requires the Court to deny defendants' motion for summary judgment. Doc. 49. While Ekers involved an incident of inmate-on-inmate violence, it is easily distinguished from the instant case. Ekers reversed the district court's grant of summary judgment to defendants upon finding that a genuine issue of material fact existed where both sides had provided opposing affidavits and sworn statements addressing whether officials followed proper security procedures on the day of the attack. Doc. 49, Ex. C. Defendants in Ekers asserted that the prison had a policy requiring strip searches and the use of metal detectors when an inmate exited his cell and that those policies were followed on the day of the attack. Id. Plaintiff submitted his own affidavit, along with the affidavit of another inmate, stating that officials had not followed these policies. Id. Thus, the Court concluded that summary judgment was not appropriate. In the instant case, however, defendants have not asserted that a prison policy required the use of metal detectors and strip searches when an inmate left his cell and plaintiff has only offered evidence of this policy through a citation to Guthrie v. Evans, a consent decree no longer in effect. Plaintiff has therefore failed to establish that a genuine issue of material fact exists with regard to whether officials followed proper security procedures on the day of the attack.

Plaintiff also asserts claims against Warden Hugh Smith and Deputy Warden Steven Roberts, contending that they failed to follow proper security protocol before allowing protective custody inmates onto the recreation yard. Doc. 49. Plaintiff contends that stationing only two officers on the yard was insufficient to ensure the inmates' safety. Id. Plaintiff, however, fails to attach a copy of any of the prison's policies or procedures that he claims defendants violated in the instant case. Instead, plaintiff claims that the prison was not following the mandates laid down by this Court in Guthrie v. Evans, Case No. 3068 (S.D. Ga. 1972), a remedial consent decree which ordered changes in many aspects of the Georgia State Prison, including issues such as the use of force, security, training of officers, and medical and mental health treatment. See Clark v. Evans, 840 F.2d 876, 879 (11th Cir. 1988). The Court terminated the Guthrie decree in 1997, Case No. 3068, docs. 1724, 1729, in the wake of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321. Guthrie, therefore, has no application to the instant case. Plaintiff has failed to offer evidence of any policy or security standards that were not followed, and he has failed to cite any authority to support his claims that

the policies as applied on the date of the attack were constitutionally insufficient. Plaintiff's claims against these defendants should also be DISMISSED.[5]

## V. Conclusion

Based on the foregoing, defendants' motion for summary judgment (doc. 33) should be GRANTED and plaintiff's complaint should be DISMISSED.

SO REPORTED AND RECOMMENDED this 16TH day of August, 2006.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5]To the extent plaintiff attempts to hold defendants Smith and Roberts liable based on their positions as jail administrators, his claims likewise fail. Claims brought pursuant to § 1983 cannot be based upon theories of vicarious liability or respondeat superior. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978). Rather, the plaintiff must demonstrate either that the individual defendant directly participated in the alleged constitutional deprivation or that there is some other causal connection between the official's acts or omissions and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Such a causal connection may be established by showing that a supervisory official implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the violation occurred. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985). Plaintiff has not established any connection between his alleged constitutional deprivations and any policies, customs, or conduct of Warden Smith or Deputy Warden Roberts.